State of Wisconsin, Plaintiff-Respondent,
v.
Gregory D. Jens, Defendant-Appellant.
No. 03-3153-CR.
Court of Appeals of Wisconsin.
Opinion Filed: January 25, 2005.
Before Wedemeyer, P.J., Curley and Kessler, JJ.
¶1 KESSLER, J.
Gregory D. Jens appeals from judgments following his guilty pleas to first-degree sexual assault by use of a dangerous weapon, false imprisonment, first-degree recklessly endangering safety, and battery. He also appeals from an order denying his motion for postconviction relief. Jens presents three arguments on appeal: (1) the trial court erroneously denied Jens's request to represent himself at trial; (2) Jens was denied his right to a prompt disposition guaranteed by WIS. STAT . § 971.11 (2003-04);[1] and (3) Jens should be allowed to withdraw his pleas based on ineffective assistance of trial counsel.
¶2 We conclude that because Jens pled guilty, he waived his right to appeal the trial court's decision denying him the right to proceed pro se and the prompt disposition issue. We also conclude that Jens is not entitled to plea withdrawal. We affirm the judgments and order.

BACKGROUND
¶3 Jens was charged in connection with two incidents that occurred on November 11 and 30, 2001. According to the complaint for the first incident, for which Jens was charged with misdemeanor battery, Jens struck his girlfriend, Nikki K., several times and dragged her around an intersection.
¶4 The complaint related to the November 30 incident alleged as follows. Jens and Nikki K. got into a fight at Nikki K.'s apartment. Jens became very angry and, over the course of at least five hours, choked and beat Nikki K. severely. He cut her with knives, threatened to kill her and urinated all over her body. Jens then had nonconsensual sexual intercourse with Nikki K., after which he tied Nikki K.'s hands with a horsewhip. Jens bound Nikki K.'s ankles to his so that he could take a nap without worrying that she would escape. When Jens fell asleep, Nikki K. cut herself free and ran, naked, to the gas station next to her apartment building. The police were called and Nikki K. was taken to the hospital. She suffered swelling and bruising to her entire face and head area. Her teeth shifted in her mouth and her nose was fractured. She had ligature marks around her wrists and ankles and bruising around her neck where she had been choked.
¶5 Jens was charged with six felonies and, after a preliminary hearing, was bound over for trial. There were numerous pretrial court appearances. Both the first and second attorneys appointed to represent Jens were permitted to withdraw after indicating that their attorney-client relationship with Jens had deteriorated. Jens agreed with both motions to withdraw. A third attorney was appointed.
¶6 On a scheduled trial date in July 2002, counsel for Jens asked the court to order a competency evaluation because her client was distraught over incidents that had taken place the night before in the jail. The trial court agreed. The competency evaluator concluded that Jens was competent. At a hearing on the competency report, counsel for Jens indicated that both she and Jens agreed that he was competent. She explained that things had improved greatly since Jens was returned to Waupun Correctional Institution (where he was serving time for a probation revocation). The trial court concluded Jens was competent to proceed and reset the matter for trial.
¶7 The trial was conducted in December 2002.[2] Several weeks prior to the start of trial, Jens sent the court a letter indicating that if his trial counsel would not file the motions he wanted filed, he intended to proceed pro se. On the morning of trial, Jens told the trial court that he wanted to represent himself, with his trial counsel as "standby counsel." The trial court engaged Jens in a lengthy colloquy to determine whether Jens was competent to proceed pro se. Ultimately, the trial court concluded that Jens's anger made him incompetent to represent himself. The court explained:
I am going to deny your request to proceed pro se. I believe that you are as literate or more literate than most defendants who are charged in cases in Milwaukee County. I believe that you are aware of the advantages and disadvantages of your own representation and of the difficulties that you would face in this trial. I believe you are also aware of the charges against you and the maximum penalties that I can impose. I think that in all other respects you are competent in the sense that you are a person who can hear what's said and you can respond intelligently. In those circumstances in [a general] case I would allow you to represent yourself.... However, in this case ... we are talking about a very complex case ... where your actions in the courtroom influence and affect ... the time, and the attention, and the professional role that the jurors play.... I don't believe that your anger arises to something that the law would recognize as a disability in the sense that blindness or deafness or I.Q. might be a disability, but I think that your anger is a disability here in this courtroom because I think it will prevent you from trying the case in an orderly fashion.... I believe that what I am looking at is the prospect of having you try this case in front of this jury without being able to focus on the evidence, without being able to make an orderly presentation of the evidence, with you and I getting into it on a regular basis as you either intentionally or unintentionally violate the rules and the protocols that we impose during trial.
¶8 Jens's counsel continued to represent him during the proceedings. A jury was impaneled and the State began to present its case. On the morning of the second day, outside the jury's presence, Jens argued with the trial court about the fact that he could not cross-examine the witnesses himself. After engaging with the trial court for several minutes, Jens told the trial court that he wanted to plead guilty because the trial court was not giving him a fair trial. The trial court told Jens that that was not a good reason to plead guilty and that it would not accept a guilty plea unless Jens wanted to admit his guilt.
¶9 Several minutes later, as the trial court was about to take a break, Jens again told the trial court that he wanted to plead guilty. He said, "Your Honor, the District Attorney has offered me a deal of eight years. At this point I can see no other remedy for this situation except for me to plead guilty." The trial court suggested that Jens discuss the matter with his attorney before making the decision to change his plea.
¶10 Over the next twenty to twenty-five minutes, Jens consulted with his attorney. They spoke with the prosecutor about a plea bargain. When court resumed, counsel for Jens told the trial court that the parties had come to an agreement. Under the agreement, Jens would plead guilty to three of the felony charges and the misdemeanor battery charge. The other charges would be dismissed and the State would recommend a total sentence that would not exceed eight years of confinement and six years of extended supervision. The trial court engaged in a detailed plea colloquy with Jens and ultimately accepted his pleas and found him guilty.
¶11 The trial court sentenced Jens to eight years of initial confinement and ten years of extended supervision for the first-degree sexual assault. Jens received concurrent sentences of two years' initial confinement and two years' extended supervision on the other two felonies, and nine months' confinement for the misdemeanor. All sentences were consecutive to any sentences he was already serving for a probation revocation.
¶12 Jens filed a notice of intent to pursue postconviction relief and postconviction counsel was appointed. Counsel filed a motion for postconviction relief asking that Jens be allowed to withdraw his pleas based on ineffective assistance of trial counsel. Subsequent to this filing, Jens wrote to the trial court, indicating his unhappiness with appellate counsel. Appellate counsel moved to withdraw. In a four-page order, the trial court addressed Jens's options, noting that the Public Defender's Office had indicated that it would not appoint successor appellate counsel. The trial court stated that Jens could proceed with his appeal pro se, but warned Jens of the challenges of doing so. The order indicated that Jens must provide a written statement to the court if he wished to proceed pro se. Jens's written reply stated that he did not want "to fire" his attorney. The trial court issued an order denying postconviction counsel's motion to withdraw.
¶13 In a written order, the trial court denied Jens's motion to withdraw his pleas. This appeal followed.[3]

DISCUSSION
¶14 Jens contends that he should be allowed to withdr aw his pleas for three reasons: (1) he was erroneously denied the right to proceed pro se; (2) he was denied a prompt disposition of his case; and (3) he was denied the effective assistance of trial counsel. With respect to the first two arguments, the State argues that Jens waived these issues when he pled guilty; the State also argues the issues on their merits. In response to the waiver argument, Jens does not contest the applicability of the guilty-plea-waiver rule. Instead, he argues that if he was incompetent to proceed pro se, he was incompetent to plead guilty and he should be allowed to withdraw his pleas on that basis. His argument is fallacious. Were he correct, guilty pleas could only be accepted from persons competent to act as their own attorneys. That is not the law.
¶15 "[A] guilty plea, voluntarily and understandingly made constitutes a waiver of nonjurisdictional defects and defenses including claims of violations of constitutional rights prior to the plea." Mack v. State, 93 Wis. 2d 287, 293, 286 N.W.2d 563 (1980). The guilty-plea-waiver rule is a rule of administration and not of power. State v. Riekkoff, 112 Wis. 2d 119, 124, 332 N.W.2d 744 (1983). Nonetheless, this rule is generally applied, with two exceptions: it is not applied to issues concerning double jeopardy, see State v. Hubbard, 206 Wis. 2d 651, 655, 558 N.W.2d 126 (Ct. App. 1996), or to denials of motions to suppress evidence, see WIS. STAT. § 971.31(10).
¶16 Before we can decide whether Jens has waived his first two issues, we must consider whether his pleas were "voluntarily and understandingly" made. See Mack, 93 Wis. 2d at 293. Jens did not allege in his postconviction motion or in his brief-in-chief that his pleas were unknowing. However, in his reply brief, he argues that his plea was not knowingly, intelligently and voluntarily entered because, as the trial court concluded, Jens lacked the ability to proceed pro se. We are not persuaded by this argument, for a number of reasons.
¶17 In Wisconsin, the standard of competency to conduct a self-representation defense is higher than the standard for competency to stand trial. State v. Ruszkiewicz, 2000 WI App 125, ¶34, 237 Wis. 2d 441, 613 N.W.2d 893. Therefore, assuming without deciding that Jens was not competent to represent himself (a proposition that he disputes elsewhere in his brief), it does not necessarily follow that he was not able to knowingly and voluntarily plead guilty. We have independently examined the guilty plea colloquy. Nothing in that proceeding leads us to conclude that Jens's plea was anything other than knowingly, intelligently and voluntarily entered.
¶18 We are satisfied that Jens's pleas were voluntarily and understandingly made. Further, we decline to deviate from the guilty-plea-waiver rule. We will not consider the merits of Jens's challenges to the trial court's determination that Jens was not competent to represent himself, nor the trial court's conclusion that Jens was not denied a prompt disposition of his case. Jens's knowing and voluntary guilty plea is a waiver of both of those complaints. See Mack, 93 Wis. 2d at 293.
¶19 The final issue is whether Jens should be allowed to withdraw his guilty pleas based on ineffective assistance of counsel. "The withdrawal of a guilty plea is not a `right,' but is addressed to the sound discretion of the trial court and will be reversed only for an [erroneous exercise] of that discretion." State v. Booth, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987). A defendant seeking to withdraw a guilty plea after sentencing is required to show "that a manifest injustice would result if the withdrawal were not permitted." Id. at 235. That showing must be by clear and convincing evidence, and the burden of proof is on the defendant. Id. at 237. A plea that is not knowingly, voluntarily or intelligently entered is a manifest injustice. State v. Giebel, 198 Wis. 2d 207, 212, 541 N.W.2d 815 (Ct. App. 1995).
¶20 Jens appears to offer three reasons in support of his motion for plea withdrawal: (1) trial counsel ineffectively cross-examined a witness at trial; (2) Nikki K. has allegedly provided an affidavit indicating that Jens was not the perpetrator; and (3) Jens's change of heart was "a complete deviation from his position throughout many months of these proceedings." We agree with the trial court that these allegations justify neither a hearing on Jens's motion nor the relief that he seeks.
¶21 Jens fails to explain how his trial counsel's alleged ineffective crossexamination had any effect on the knowing and voluntary nature of his plea. Jens has not proven, by clear and convincing evidence, that a manifest injustice would result if the withdrawal were not permitted. See Booth, 142 Wis. 2d at 237.
¶22 Next, even if Nikki K. has signed an affidavit indicating that Jens was not the perpetrator, this is not a basis to allow Jens to withdraw his plea. Jens admitted that he committed the crimes when he pled guilty. Nikki K.'s affidavit does not affect that admission. Moreover, in the context of this case, the affidavit is entirely consistent with a recantation that Nikki K. made earlier in the proceedings, so the information was not something unknown to Jens at the time he pled guilty.[4]
¶23 Finally, even if Jens's decision to plead guilty could be fairly characterized as a deviation from his prior position, that alone is not a basis to withdraw his pleas. Defendants frequently decide to plead guilty on the day of trial, or even after trial has begun. Such an act does not automatically mean that a plea was not made knowingly, intelligently and voluntarily.
By the Court.  Judgments and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] The pretrial matters through August 1, 2002, were heard by the Honorable M. Joseph Donald. Proceedings after August 2, 2002, including the trial, were heard by the Honorable Richard J. Sankovitz, after the case was transferred pursuant to judicial assignment.
[3] Jens continued to personally write letters and file pro se motions asking the trial court to reconsider its decision. The trial court issued two orders denying Jens's motions for reconsideration. Those two orders are not appealed from and will not be addressed.
[4] Although Nikki K. recanted her statements to police, the State proceeded with the case, confident that Jens was the man who had injured Nikki K. The State's position was supported by hours of tape-recorded conversations between Nikki K. and Jens, made after his arrest, during which Jens urged Nikki K. to say he had not been her attacker and to fail to show up for court proceedings.