In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2809

ALAN R. WARD,

*Petitioner-Appellant*,

*v.*

LARRY JENKINS, Warden,
Fox Lake Correctional Institution*,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:07-CV-961—**Lynn Adelman**, *Judge.*

ARGUED NOVEMBER 12, 2009—DECIDED JULY 23, 2010

Before CUDAHY, MANION, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Petitioner Alan R. Ward pleaded guilty in Wisconsin state court to felony theft by contractor and felony bail jumping after taking down

---

* We substitute Larry Jenkins, the current warden of Fox Lake Correctional Institution, as the Respondent in this action. *See* Fed. R. App. P. 43(c)(2).

payments from customers of his home improvement business without performing any of the work he contracted to do. He was sentenced to five years' imprisonment and nine years' supervised release. Ward sought postconviction relief in the state courts arguing, *inter alia*, that his counsel was ineffective because he ignored Ward's requests to file a motion to withdraw his guilty plea prior to sentencing. After exhausting state postconviction remedies, Ward sought federal habeas corpus relief under 28 U.S.C. § 2254. The district court denied Ward's petition without holding an evidentiary hearing. Because Ward has alleged facts which, if proven, would entitle him to federal habeas relief, and because he was never afforded a full and fair hearing in the state courts, we remand to the district court for an evidentiary hearing.

## I. BACKGROUND

Ward owned a home improvement business called Ward Construction. Though Ward may have been a skilled contractor, he had serious problems with the financial side of his operation. Ward accepted down payments from numerous customers, but failed to perform the work he contracted to do. As a result, he was charged with multiple violations of Wisconsin's criminal theft by contractor statute, Wis. Stat. § 943.20(1)(b). He was also subsequently charged with multiple counts of felony bail jumping, Wis. Stat. § 946.49(1)(b), when he continued to run his business after posting bail in violation of his signature bond. Overall, Ward was charged in four informations with 21 total counts of theft by contractor and bail jumping.

Ward had a plea hearing in Sauk County Circuit Court on March 10, 2004. He was represented by attorney Roger Klopp, whom he met for the first time that day. Ward claims that at no time during that meeting did Klopp review possible defenses to the charges with him. At the hearing, the state set forth the terms of a plea agreement. Ward would plead guilty to two counts of theft by contractor and three counts of felony bail jumping, and the remaining counts in the various informations would be dismissed, but read in for the purposes of sentencing and restitution. The amount of restitution would be determined in conjunction with sentencing, and the state would cap its total confinement recommendation to six years.

Some confusion ensued when it came time for Ward to enter a plea. Asked how Ward wished to plea, Klopp initially answered "no contest." The court noted that the plea agreement was based on a plea of guilty, not no contest. Klopp immediately corrected himself and clarified that Ward's plea was "guilty," and stated that he had explained the difference between that and no contest to his client. Ward, however, immediately spoke up and told the court that he did not in fact understand the difference between the two. The court then provided an explanation to Ward, which Ward stated he understood. Following this explanation, however, Ward repeated his desire to plead no contest.

Concluding that there was apparently no agreement, the judge began to schedule the case for trial. Klopp interjected and asked for a recess in order to explain

and clarify the details of the plea agreement with Ward, which the court granted. Ward claims that during this recess, Klopp pressured him to plead guilty. Back in court after the recess, Ward indicated that he had come to understand the difference between guilty and no contest, and entered a plea of guilty pursuant to the agreement. The court accepted the plea and scheduled a sentencing hearing.

Following the plea hearing, but before sentencing, Ward asked for a new lawyer. Klopp withdrew as counsel, and Attorney Gerald Opgenorth was appointed in his stead on September 1, 2004. Ward claims that thereafter, he repeatedly instructed Opgenorth to withdraw his guilty plea, but that Opgenorth ignored his requests. According to Ward, Opgenorth went so far as to draft a motion to withdraw the plea, but never filed it. It is this alleged refusal to withdraw the plea that forms the basis of Ward's habeas petition before this court.

With his guilty plea still in place, Ward's sentencing hearing took place on February 11, 2005. Ward spoke at the hearing, but made no indication that he wanted to go to trial instead of pleading guilty, nor did he bring up any alleged requests to Opgenorth to move to withdraw his plea. The court sentenced Ward to five years' imprisonment and nine years' supervised release and tentatively ordered restitution in the amount of $78,000.[1]

---

[1] The court admitted the state's proposed restitution, but gave Ward thirty days to challenge the state's proposal. Neither

(continued...)

Ward sought postconviction relief following judgment. In a pro se motion, Ward raised a host of claims, including allegations that both attorneys Opgenorth and Klopp rendered ineffective assistance of counsel. With respect to Opgenorth, Ward stated that he was ineffective due to "[t]he denial of defendant's continued request to WITHDRAW THE PLEA. Attorney Opgenorth did in fact typed [sic] out defendant's motion to withdraw the plea, but insisted not to follow through with defendant's request to withdraw the guilty plea." With respect to Klopp, Ward alleged that he "changed" Ward's no contest plea without his consent, and that he waived Ward's right to a preliminary hearing without his consent. Ward's motion cited the Sixth and Fourteenth Amendments, *Strickland v. Washington*, 466 U.S. 668 (1984), and a number of state cases involving ineffective assistance of counsel claims. Ward requested a *Machner* hearing, an evidentiary hearing provided under Wisconsin law to preserve trial counsel's testimony when pursuing an ineffective assistance of counsel claim. *See State v. Machner*, 285 N.W.2d 905, 908-09 (Wis. 1979); *see also Northern v. Boatwright*, 594 F.3d 555, 559 (7th Cir. 2010). The trial court denied all of Ward's claims and denied a *Machner* hearing.

Ward appealed to the Wisconsin Court of Appeals, again alleging that Opgenorth "did not respect the client's

_____

(...continued)

Opgenorth nor Ward filed a request for another restitution hearing, so the court ordered Ward to pay the $78,000 in restitution that had been proposed by the state.

decision to withdraw the plea," and again sought a *Machner* hearing to develop evidence in support of his allegations. The court of appeals also denied Ward's claims. In its opinion, the court set forth the *Strickland* standard, and stated "Ward contends that . . . Opgenorth provided ineffective assistance of counsel because [he] failed to request a restitution hearing. We reject this claim because, among other things, Ward did not adequately plead it in his postconviction motion." *State v. Ward*, 739 N.W.2d 490 (Wis. Ct. App. 2007) (unpublished disposition). The appellate court did not directly address Ward's claim that Opgenorth ignored requests to withdraw Ward's guilty plea. Ward sought review from the Wisconsin Supreme Court, again noting that he had been denied an evidentiary hearing. The Wisconsin Supreme Court denied review. *State v. Ward*, 742 N.W.2d 525 (Wis. 2007) (table disposition).

Having exhausted his state remedies, Ward filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 2254. In the petition, Ward alleged multiple instances where both Klopp and Opgenorth provided ineffective assistance of counsel, including Opgenorth's failure to withdraw Ward's guilty plea. The district court denied all of Ward's claims, finding that the state court did not unreasonably apply *Strickland* because Ward did not allege that he was prejudiced by Klopp or Opgenorth's conduct. Still acting pro se, Ward appealed to this court. We granted a certificate of appealability and appointed counsel to represent him as to a single issue: whether Opgenorth rendered ineffec-

tive assistance of counsel by refusing to file a motion to withdraw Ward's guilty plea.

## II.  ANALYSIS

### A.  Procedural Default

Before reaching the merits of Ward's petition, we first address the state's argument that Ward procedurally defaulted his ineffective assistance of counsel claim. We review a district court's procedural default ruling de novo. *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003).

The procedural default doctrine precludes federal review of a state court's habeas decision when the state court's decision was based on adequate and independent state law, or when the federal issue was not fairly presented to the state courts and those courts would now hold the claim procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). The doctrine requires that petitioners fairly present their claims "in concrete, practical terms, [so that] the state court [is] sufficiently alerted to the federal constitutional nature of the issue." *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (quoting *Kurzawa v. Jordan*, 146 F.3d 435, 442 (7th Cir. 1998)). To determine whether a constitutional issue has been fairly presented, we consider four factors: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; 3) whether the petitioner

framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Ellsworth*, 248 F.3d at 639. In determining whether a claim has been fairly presented, we liberally construe pro se petitions such as Ward's. *See Johnson v. Hulett*, 574 F.3d 428, 433 (7th Cir. 2009).

The state argues that Ward procedurally defaulted his claim because he failed to fairly present the Wisconsin courts with a federal issue, and the state courts ruled against Ward based on adequate and independent state law grounds. We disagree. A review of Ward's postconviction motion before the state court shows that he fairly presented a federal issue. Ward claimed that Opgenorth provided ineffective assistance of counsel because he failed to withdraw his guilty plea. Ward cited the Sixth and Fourteenth Amendments, *Strickland v. Washington*, and a number of state cases involving constitutional analysis. While Ward's motion did not provide a highly detailed factual basis for Opgenorth's alleged deficient conduct or a precise account of how that conduct prejudiced Ward, it adequately called to mind a specific constitutional right—the Sixth Amendment right to effective assistance of counsel—and alleged a pattern of facts that is well within the mainstream of constitutional litigation of that right. *See Perruquet*, 390 F.3d at 512 ("Whatever gaps there may be in [defendant's] petition and supporting memorandum, the basic rationale of [defendant's] due process argument is readily discernible."). Ward's claim contains enough

detail to have sufficiently alerted the state court to his federal constitutional claim.

Of course, Ward must present the same "factual and legal bases" to the federal court that he presented to the state court. *Curtis v. Montgomery*, 552 F.3d 578, 583 (7th Cir. 2009). "[H]ypertechnical congruence between the claims" made in the federal and state fora is not required, however, *Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006), and a petitioner may "reformulate his claims somewhat, so long as the substance of his argument remains the same." *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). While Ward's federal argument is more developed than it was before the state court (as one would expect with the benefit of counsel), the substance is the same: that Opgenorth ignored requests to move to withdraw the guilty plea. *See Picard v. Connor*, 404 U.S. 270, 277 (1971) (holding that "variations in the legal theory or factual allegations" of a claim do not bar review so long as the substance of the federal claim remains the same).

### B. Whether Ward is Entitled to an Evidentiary Hearing

Ward seeks habeas corpus relief on the basis that he was denied effective assistance of counsel when Opgenorth allegedly refused to move to withdraw Ward's guilty plea. Ward claims that he repeatedly asked Opgenorth to file a motion to withdraw the plea prior to sentencing, but that Opgenorth ignored those requests. According to Ward, Opgenorth even went so far as to type up a motion to withdraw the plea, but

never filed it. Ward claims that had Opgenorth heeded his requests, Ward would not have pleaded guilty and would instead have gone to trial.

We review Ward's habeas claim under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. To be entitled to relief under AEDPA, Ward must demonstrate that the state court decision denying his claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Jones v. Wallace*, 525 F.3d 500, 503 (7th Cir. 2008). Here, the federal law upon which Ward bases his claim is that of *Strickland v. Washington*. *Strickland*'s familiar two-part test requires a petitioner to demonstrate (1) that counsel's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and (2) a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To satisfy *Strickland* in the context of a guilty plea, a petitioner must show that "counsel's advice regarding the plea was objectively unreasonable and that there is a reasonable probability that but for counsel's error, [petitioner] would not have pled guilty, but would have insisted upon a trial." *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

We are not in a position to evaluate the merits of Ward's ineffective assistance claim, because the facts relevant to Ward's claim have never been developed. The credibility of Ward's allegations have never been tested,

nor has the testimony of attorneys Opgenorth or Klopp ever been obtained. *See Matheney v. Anderson*, 253 F.3d 1025, 1040 (7th Cir. 2001) ("An adequate record is imperative to properly evaluate ineffective assistance claims."); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (reasonableness inquiry is "circumstance-specific"). As the *Strickland* court itself held, courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. Here, we do not have these requisite facts. Ward has asserted in his § 2254 petition, under the penalty of perjury, that Opgenorth was unwilling to move to withdraw his guilty plea. Ward sought an evidentiary hearing at every level of his state postconviction proceedings in order to attempt to develop evidence to prove this assertion, but those requests were denied. Nor was he afforded an evidentiary hearing in the district court below. Given this posture, our inquiry is limited to whether Ward is entitled to an evidentiary hearing to try and develop facts that would support his petition.

AEDPA governs the availability of evidentiary hearings on federal habeas review, and generally bars them except in narrow exceptions inapplicable to Ward. *See* 28 U.S.C. §§ 2254(e)(2)(A), (B). But § 2254(e)(2)'s bar only applies when the failure to develop the factual basis for a claim is attributable to the petitioner. *Williams v. Taylor*, 529 U.S. 420, 435 (2000); *Davis v. Lambert*, 388 F.3d 1050, 1059-60 (7th Cir. 2004). Here, it is through no fault of Ward that the factual basis of his claim has not been developed. Ward diligently sought a *Machner* hearing at

every step in his state court proceedings, but those requests were denied. Section 2254(e)(2) thus does not bar an evidentiary hearing for Ward. *Allen v. Buss*, 558 F.3d 657, 664-65 (7th Cir. 2009) (§ 2254(e)(2) does not block evidentiary hearing where state court did not fully consider evidence petitioner had put forth); *Davis*, 388 F.3d at 1060 (§ 2254(e)(2) no bar where petitioner was "diligent in pursuing his opportunities to develop the necessary facts in state court.").

With AEDPA posing no bar, Ward is entitled to an evidentiary hearing in federal court if (1) he has alleged facts which, if proved, would entitle him to habeas relief and (2) the state courts, for reasons beyond his control, never considered his claim in a full and fair hearing. *Davis*, 388 F.3d at 1061; *Matheney v. Anderson*, 253 F.3d 1025, 1039 (7th Cir. 2001). For the reasons explained below, we find that Ward has satisfied these requirements. Ward has alleged facts which if proven would entitle him to habeas relief on his ineffective assistance of counsel claim, and despite his efforts, the state courts never considered the claim in a full and fair hearing.

### 1. Ward Has Alleged Facts Which, If Proved, Would Entitle Him to Relief

Ward alleges that he instructed Opgenorth to file a motion to withdraw his guilty plea, but that Opgenorth disregarded these instructions. If it is true that Opgenorth refused to file a motion to withdraw Ward's plea despite a direct instruction that he do so, his performance was constitutionally ineffective under *Strickland*. Such con-

duct would fall below *Strickland*'s objective standard of reasonableness, and it prejudiced Ward because there was at least a reasonable probability that such a motion would have succeeded.

### a. Deficiency

As the state conceded at oral argument, if Opgenorth did indeed refuse to heed a direct request, this conduct was deficient. The decision whether or not to plead guilty is a major one that rests ultimately with the client, and a lawyer who disregards specific instructions as to such a decision acts unreasonably. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) (defendant has "ultimate authority" over decisions involving fundamental trial decisions including whether to plead guilty (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *Wallace v. Davis*, 362 F.3d 914, 920 (7th Cir. 2004) ("[m]any decisions during trial fall to counsel by default or by virtue of superior knowledge, but the major ones . . . may be exercised personally, if the accused wants to make rather than delegate these vital choices"); *cf. Flores-Ortega*, 528 U.S. at 477 (lawyer who disregards specific instructions to file a notice of appeal acts unreasonably). If, on the other hand, it turns out that Opgenorth strongly advised Ward not to withdraw the plea as a strategic matter, but did not disregard any direct, unequivocal instructions, his conduct may well have been reasonable, particularly in light of *Strickland*'s "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689; *see also Brown v. Finnan*,

598 F.3d 416, 423 (7th Cir. 2010). The circumstances of what exactly transpired between Ward and Opgenorth will be a determination for the district court to make with the benefit of an evidentiary hearing at which credibility determinations can be made. *See Flores-Ortega,* 528 U.S. at 477; *Matheney*, 253 F.3d at 1040.

### b.   Prejudice

Assuming that Ward's allegations are true and that Opgenorth's performance was objectively unreasonable, Ward must also demonstrate that the refusal to file a motion to withdraw his guilty plea prejudiced him. *Strickland*, 466 U.S. at 694. To demonstrate prejudice, Ward would have to show that (1) there was reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial and (2) there was a reasonable probability that the court would have granted his motion to withdraw his guilty plea. *Hill*, 474 U.S. at 59; *Moore*, 348 F.3d at 241. We find that Ward has satisfied these requirements.

As to *Hill*'s first requirement, Ward contends that he would have gone to trial but for Opgenorth's actions because he had a viable defense against the charges he faced. Ward claims that although he may have taken customer money without performing any services in return, he never intended to keep the money and always meant to eventually complete the work. He argues that the government therefore could not have proven intent, a necessary element for a violation of the theft by contractor law. Wis. Stat. § 943.20(1)(b). We need not assess the

likely success of such a defense; Ward's claim that he would have insisted on going to trial to pursue it is enough at this juncture to satisfy the first prong of the prejudice analysis. *See Hill*, 474 U.S. at 59; *see also Holtan v. Parratt*, 683 F.2d 1163, 1170 (8th Cir. 1982) (prejudice where attorney failed to act on defendant's request to withdraw a nolo contendre plea); *cf. Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994) (prejudice where lawyer failed to carry out client's instruction to file an appeal regardless of chances of success).

The district court concluded that Ward did not demonstrate prejudice because he never actually alleged that he would have gone to trial but for Opgenorth's alleged errors. We disagree with this interpretation. While it is true that Ward's § 2254 petition does not explicitly state that he would have insisted on going to trial, that to us is the clear import of his claim that he wished to withdraw his guilty plea. The natural result of a plea withdrawal would have been to face trial on the charges instead (and with the benefit of counsel on appeal, Ward makes the point explicitly). This interpretation is particularly appropriate in light of our obligation to liberally construe pro se submissions like Ward's. *See, e.g., McGee v. Bartow*, 593 F.3d 556, 566-67 (7th Cir. 2010).[2]

---

[2] That said, the credibility of Ward's claim that he wished to go to trial is undercut by the fact that he made no such assertion in state court at a time when one might have expected him to do so. Ward was afforded an opportunity to speak during his sentencing hearing, and at no time during his statements did he

(continued...)

*Hill*'s second requirement is a reasonable probability that the state court would have granted a motion to withdraw his guilty plea had one been filed. 474 U.S. at 59. In Wisconsin, a defendant will be permitted to withdraw his plea prior to sentencing if there is a "fair and just" reason for doing so, and the prosecution will not be "greatly prejudiced" by the withdrawal. *State v. Barney*, 570 N.W.2d 731, 735 (Wis. Ct. App. 1997). The state conceded at oral argument that it would not have been prejudiced by a withdrawal of Ward's guilty plea, so our inquiry turns solely on whether a fair and just reason

---

(...continued)

express a desire to go to trial or make any reference to a refusal by Opgenorth to withdraw his plea. A district court need not hold an evidentiary hearing when "the record refutes the applicant's factual allegations." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (*Strickland* claim that counsel failed to investigate mitigating evidence was refuted by record showing that petitioner had instructed counsel not to do so); *see also Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (no evidentiary hearing necessary where petitioner's assertion "flies in the face of logic in light of . . . [facts] easily discernible from the record."). The state does not argue, however, that Ward's factual allegations are refuted by the record, and while we harbor some doubts about Ward's ability to prove his assertion, we do not discern anything in the record that directly contradicts his claim so as to preclude an evidentiary hearing. *Cf. Schriro*, 550 U.S. at 476 (sentencing colloquy "plainly indicate[d]" that petitioner had instructed counsel not to present mitigating evidence, contradicting claim on habeas review that counsel had unreasonably failed to do so).

exists for withdrawal under Wisconsin law. Wisconsin courts have "consistently articulated a liberal rule" in determining what constitutes a fair and just reason to withdraw a plea. *State v. Jenkins*, 736 N.W.2d 24, 33-35 (Wis. 2007); *see also State v. Garcia*, 532 N.W.2d 111, 117 (Wis. 1995) ("confusion is a fair and just reason for withdrawal"); *State v. Manke*, 602 N.W.2d 139, 144 (Wis. Ct. App. 1999) (granting plea withdrawal where defendant "misunderstood his plea and received misleading advice from his attorneys").

Ward asserts that his confusion during his plea hearing constitutes a fair and just reason to withdraw the plea. A review of the plea hearing transcript does create the impression that Ward may have been confused about the plea he entered. Even after the judge explained the difference between a no contest and guilty plea to Ward, he continued to express confusion. Ward further contends that Klopp did not resolve his confusion during the recess that followed, but instead pressured him to enter the guilty plea. That said, Ward did eventually indicate to the court that he understood the difference between a guilty and no contest plea, and that he wished to plead guilty.

We need not decide whether Ward's assertions definitively constitute a "fair and just" basis for withdrawal of his plea; we need only determine whether there was a reasonable probability that a Wisconsin court would so conclude. *Hill*, 474 U.S. at 59; *see also Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007) ("[t]he chances of prejudice need only be better than negligible."). Given the broad

discretion Wisconsin courts have in this area, we find that there is a reasonable probability that the trial court would have found that there was fair and just reason to permit Ward to withdraw his plea. *See Jenkins*, 736 N.W.2d at 33; *see also Garcia*, 532 N.W.2d at 117 ("confusion is a fair and just reason for withdrawal").

### 2. The State Courts Never Considered Ward's Claim in a Full and Fair Hearing

To be entitled to an evidentiary hearing, Ward must also demonstrate that the state courts, for reasons beyond his control, never considered his claim in a full and fair hearing. *Davis*, 388 F.3d at 1061. It is clear that the state courts did not consider Ward's claim regarding Opgenorth in any full and fair hearing. As we have already discussed, Ward requested a *Machner* hearing at every step in his state proceedings in order to develop the factual basis for his assertions, but those requests were denied. *See id.*; *Jones*, 525 F.3d at 503 (petitioner not at fault for failing to develop factual record when state courts refused his request for evidentiary hearing). Ward has satisfied this requirement.

### III.  CONCLUSION

Ward is entitled to an evidentiary hearing regarding his claim that Opgenorth rendered ineffective assistance of counsel by refusing to file a motion to withdraw Ward's guilty plea. The case is REMANDED to the district

court with instructions to proceed with an evidentiary hearing consistent with this opinion.[3]

---

[3] We note the potential implications of the relief Ward seeks. Ward has already served the custodial sentence set forth in his plea agreement and is currently on supervised release. If it is found that Ward is entitled to federal habeas relief, Ward could get exactly what he seeks—withdrawal of his plea and a trial instead. The state could conceivably reinstate all of the charges against him, including those that had been dropped pursuant to the plea agreement, exposing Ward to far more potential prison time. Asked at oral argument whether Ward wished to proceed in light of this risk, counsel represented that he did. Still concerned about whether Ward truly understood the potential implications of the relief he seeks, we instructed counsel to again confer with Ward, and if he still wished to proceed, to file a statement of intent so indicating. Counsel filed a notice reiterating Ward's "desire and intent" to pursue the appeal shortly thereafter, and so we therefore proceed with disposition of the case.

---

7-23-10