In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2822

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS O'CONNELL HOLSTEIN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:06-cr-00761-1—**John F. Grady**, *Judge.*

ARGUED APRIL 15, 2010—DECIDED AUGUST 18, 2010

Before BAUER, ROVNER and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* Thomas O'Connell Holstein was convicted of nine counts of bankruptcy fraud and making false statements in bankruptcy petitions, in violation of 18 U.S.C. §§ 157 and 1519. He appeals his conviction claiming that there was insufficient evidence with which to find him guilty beyond a reasonable doubt. We affirm.

## I. BACKGROUND

Holstein provided bankruptcy services at his law firm, known as Lawline. In September 2005, he signed a consent petition with the Illinois Attorney Registration and Disciplinary Commission in which he acknowledged professional misconduct and agreed to an eighteen-month suspension of his law license, effective October 17, 2005. Despite the agreement and impending suspension, Holstein continued to accept clients throughout August and September of that year.

Several former clients testified that they called Lawline in September of that year, seeking legal representation in their bankruptcy proceedings. Holstein routinely answered the phone and advised the clients to come to the office for an in-person consultation. But the clients testified that they usually met only with Lisa Vega, a paralegal Holstein employed, who helped them fill out forms and accepted their fees. If they saw Holstein at all, it was only momentarily.

Vega testified that Holstein directed her to accept fees from the clients and file the bankruptcy petitions on their behalf. In addition, Vega said Holstein directed her to black out his name on the petitions and indicate that the clients were not represented by counsel and would proceed pro se. The petitions therefore represented to the court that the clients paid no legal fees. But because Lawline handled the filings, each of the clients testified that they arrived at their initial creditors' meeting expecting Holstein to appear as their attorney. None of the clients was aware of the pro se status statements on his or her petition.

A grand jury indicted Holstein on nine counts of bankruptcy fraud, 18 U.S.C. § 157(1), and making false statements in a bankruptcy proceeding, 18 U.S.C. § 1519.

After a bench trial, Judge Grady found Holstein guilty beyond a reasonable doubt on all counts and sentenced him to one year and one day in prison. Specifically, the Judge found that Holstein solicited clients, accepted fees, and hid from the clients his impending suspension and consequent inability to complete the representation; misrepresented to the bankruptcy court that the debtors were unrepresented by counsel; and made the misrepresentations to conceal that he was practicing without a license.

Holstein timely appealed.

## II.  DISCUSSION

To establish Holstein's guilt for bankruptcy fraud, the government had to prove: (1) that he engaged in a fraudulent scheme; (2) that he made misrepresentations to the bankruptcy court; (3) in order to further the scheme. *See* 18 U.S.C. § 157 (2008). In order to prove Holstein guilty of falsifying documents before a bankruptcy court, the government had to show that he "falsified . . . any document with the intent to impede, obstruct or influence" a bankruptcy matter. *See* 18 U.S.C. § 1519.

Holstein argues that the government presented insufficient evidence to establish his guilt on the essential elements of the statutes in question. Challenging the sufficiency of the evidence is a tough undertaking at best. *See*

*United States v. Carillo*, 435 F.3d 767, 775 (7th Cir. 2006). We must be persuaded that "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We will not reweigh the evidence or second-guess the credibility determinations. *United States v. Seversen*, 569 F.3d 683, 689 (7th Cir. 2009).

Holstein argues that the government failed in its proof because he had no involvement in any of the consultations with the clients or in filing the fraudulent bankruptcy petitions. For almost the entire time, according to Holstein, he was drunk and secluded at his summer home. He claims the evidence showed that Vega acted alone. Vega met with the clients, filled out the petitions and accepted the fees. Holstein was rarely if ever in the office. He points to several possible motives Vega may have had for filing the petitions pro se, including keeping her job and retaliating against Holstein for a failed romance. If Vega acted alone, *she* would be solely responsible for the misrepresentations.

As a sort of alternative argument, Holstein claims the government failed to prove he could have intended to mislead the bankruptcy court about whether the debtors in question were represented by counsel. Even if he directed Vega's actions in filing the pro se petitions, the fact that he paid the debtors' filing fees with Lawline checks precludes any inference that he intended to

defraud the court. Lawline was "universally associated" with Holstein, he argues, and he would never have used the checks bearing his firm's name if he wanted to mislead the court. Other lawyers did appear on the clients' behalf in some of the cases, which Holstein claims is further proof that he never intended to conceal the fact that the clients were represented by counsel.

But there is scant evidence in the record to support his theories. As mentioned above, Vega testified that Holstein directed her to black out his name and label the bankruptcy filings "pro se." She acknowledged her past relationship with Holstein, as well as the fact that Holstein's absence left her in complete control of the office much of the time. The Judge found her testimony "credible and uncontradicted," and determined that Holstein indeed directed Vega's actions. Moreover, several of the clients testified that though they met with Vega, they believed, before going to their initial bankruptcy hearings, that Holstein represented them.

Also unsupported in the record is Holstein's argument that paying the filing fees with Lawline checks obviously communicated to the bankruptcy court that he represented the debtors, thus negating any inference that Holstein intended to deceive the court. While there was testimony that Holstein had filed thousands of bankruptcy petitions under the Lawline name over the years, Holstein presented no evidence tending to show that clerks in the bankruptcy court would generally associate him with the name Lawline, or would recognize that a debtor whose petition accompanied such a payment was

represented by counsel. As the Judge pointed out in his findings, the clerks in fact did not make the connection demonstrated by the entry in the docket that they were pro se filings. Arguing that Holstein thought the use of the Lawline check would make the court aware that he represented the debtors also implicitly undercuts his argument above that Vega acted alone.

With no evidence in the record to cast doubt on the district court's findings, Holstein's appeal boils down to challenging the Judge determinations as to the credibility of the witnesses. Such a tactic is "doomed at the outset," *United States v. DeCorte*, 851 F.2d 948, 952 (7th Cir. 1988). The Judge found the evidence "overwhelming" that Holstein directed Vega's actions and that any inference that use of a Lawline check negated Holstein's intent was "implausible . . . [and] had absolutely no bearing on Mr. Holstein's frame of mind at the time these petitions were filed." The Judge had the best opportunity to listen to the witnesses and make credibility determinations and we will not second-guess those findings here. *See United States v. Kozinski*, 15 F.3d 795, 820 (7th Cir. 1994).

## III. CONCLUSION

The evidence was sufficient to establish beyond a reasonable doubt the essential elements of both 18 U.S.C. § 157(1) and 18 U.S.C. § 1519. Holstein's conviction is AFFIRMED.